names of the barges; e. g. "The Barge Called the Wilkesbarre Coal & Iron Co. 129. See Wilkesbarre Coal & Iron Co. 129," Case No. 17,661.]

BARGER, (CHAPMAN v.)  See Case No. 2,-603.

## Case No. 979.

### BARGER v. MILLER.

[4 Wash. C. C. 280.] [1]

Circuit Court, D. Pennsylvania.  Oct. Term, 1822.

EVIDENCE—DEED—POWER OF ATTORNEY — EJECTMENT—ADVERSE POSSESSION.

1. An exemplification of the record of a copy of a deed is not evidence.

[See Lemon v. Bacon, Case No. 8,241; Gregg v. Forsyth, 24 How. (65 U. S.) 179; Dick v. Balch, 8 Pet. (33 U. S.) 30.]

2. An exemplification of an agreement between A and B, executed only by B, can not be given in evidence against A.

3. A deed by an attorney, executed in his own name, is not the deed of his constituent.

[See Hanrick v. Barton, 16 Wall. (83 U. S.) 166, 173.]

4. The principal is not bound by any act of his attorney in fact, unless he acts within the scope of his authority.

5. In what case a defendant in ejectment may, and where he may not be allowed to take the possession of a prior occupant to his own, to bar the plaintiff by length of possession. The principle decided in Potts v. Gilbert, [Case No. 11,347,] explained [and distinguished.]

[See Walden v. Gratz, 1 Wheat. (14 U. S.) 292; Doswell v. De La Lanza, 20 How. (61 U. S.) 29; Shuffleton v. Nelson, Case No. 12,822.]

[At law. Ejectment by lessee of Barger, against Miller.] The lessor of the plaintiff claimed under a warrant and survey, dated in 1701, in the name of Daniel Falkner, styled the agent for the German purchasers, for upwards of twenty-two thousand acres, and a conveyance by Falkner in 1708, of the whole tract to J. H. Sprogle. The lessor of the plaintiff is one of the heirs of Sprogle, and claims one fifth of one eighth of the whole of the above tract. The defendant offered in evidence, in support of his title to the land now in dispute, an exemplification of certain articles of agreement, purporting to have been executed by the said J. H. Sprogle and V. Guiger on the 16th of April, 1718, by which Sprogle agreed to sell to Guiger two hundred and fifty acres, part of the above mentioned tract of land, for the sum of £50. This instrument was signed and sealed by Guiger only, and was admitted to record in the year 1746, upon the acknowledgment of Guiger, and his declaration that the counterpart of the agreement was duly executed by Sprogle, and was afterwards consumed by fire, and upon the certificate of

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

Johanna Sprogle, widow of J. H. Sprogle, Jun. that an agreement was found by her amongst the papers of J. H. Sprogle, Sen. in the hand writing of her deceased husband, of which the paper so offered to be recorded was a just copy. This paper was objected to by the plaintiff's counsel.

BY THE COURT. The evidence is altogether inadmissible, either as an exemplification of a recorded deed, or on the ground of the antiquity of the instrument; since it is not the original instrument, but merely an asserted copy of it. As such, it could not be legally admitted to record, and consequently, an exemplification of it is no better than any other copy of it would have been; besides, it professes to be the deed of Guiger only, and is therefore totally inoperative for the purpose for which it is offered. The ex parte affidavit of Guiger, that the counterpart was executed by Sprogle, and was afterwards consumed by fire, cannot be regarded for a moment by the court.

The defendant's counsel then gave in evidence a deed of mortgage of seven thousand five hundred acres, part of the above mentioned large tract, by J. H. Sprogle to Henry Soames, bearing date the 20th of March, 1732, and another deed dated the 20th of December, 1733, by which, for the consideration of the mortgage debt, and of other sums, Sprogle released to Soames his equity of redemption in the mortgaged premises. The court was requested to note, that these deeds were furnished by the counsel for the plaintiff to the defendant's counsel. These instruments were offered, and admitted to record in the year 1749. The defendant's counsel then gave the following evidence:—A deed bearing date the 1st of December 1749, from Thomas Preston to V. Guiger, which, after reciting the above mentioned mortgage. and release of the equity of redemption, the will of Henry Soames, by which he devised all his estate to his son John Soames, the death of John Soames intestate and without issue, leaving Catharine Yaldwin and Mary Johns, his heirs at law, and a conveyance by them to the said Preston of two hundred and fifty acres of land, part of the above mentioned mortgaged premises; conveys the said two hundred and fifty acres by metes and bounds, to the said V. Guiger, in fee simple. A deed from V. Guiger, bearing date the 27th of October 1757, to George Burgart, for one hundred acres, part of the above mentioned two hundred and fifty acres. A record of the orphan's court in 1764, vesting in John Guiger, third son of V. Guiger deceased, the remainder of the above mentioned tract of land, being one hundred and fifty acres; he agreeing to take the same, and to pay to his brothers and sisters their proportions of the appraised value of the said land. A deed from John Guiger to George Burgart, bearing date the 4th of July 1766, for the said one hundred and fifty acres. The will of George

Burgart, dated the 30th of July 1782, devising twenty-nine acres, part of the said two hundred and fifty acres, to his sons Tobias and George; and a deed dated the 26th of February 1788, between Tobias and George Burgart, sons of the said George Burgart, by which the former conveys to the latter his moiety of the said one hundred and twenty-nine acres. Lastly, a deed bearing date the 10th of May 1802, by the surviving administrator of George Burgart, the son, (made under an order of the orphan's court) conveying the said one hundred and twenty-nine acres to the defendant. The defendant then examined an ancient witness, who stated that about the year 1760, he remembered V. Guiger the elder in possession of this land. After him, he remembered old Mr. Burgart to be in possession, and living on the land. After his death, his sons Tobias and George lived on it, and George died there. After his death it was rented to different persons, and amongst others to the defendant. He thinks that the defendant has lived on the land near thirty years. It appeared by other evidence that Miller came into possession about the year 1799.

The plaintiff then gave in evidence a power of attorney executed by Henry Soames, bearing date the 1st of May 1740, authorizing Samuel Mickel to collect, sue for, and recover all moneys due to him in America, to give acquittances, and to settle and compromise the same as he might think right. Also to lease his lands·in Pennsylvania, and to collect his rents, and to sell and convey all and every of his said lands, or any part thereof, and in the name of the said Soames, to execute any deeds or conveyances for the lands so sold. Also an instrument signed and sealed by Samuel Mickel, styling himself, in the body of it, attorney in fact for Henry Soames; by which he fully acquits John H. Sprogle, his heirs and assigns, from all obligations, bonds, mortgages or conveyances, touching the premises in Hanover or elsewhere, in the county of Philadelphia, having had a final settlement with his son J. H. Sprogle, Jun. July 1740, of all accounts with J. H. Sprogle and Henry Soames. "and all papers and parchments cancelled, having received satisfaction." There is no date to this instrument, but it was admitted to record in 1742. This paper, it was proved, was found a few months past amongst some old cast away papers in the garret of Mr. Say, one of the subscribing witnesses to it.

Phillips and J. R. Ingersoll, for the plaintiff, contended, that the only apparent blemish in their title being the mortgage and release of the equity of redemption by J. H. Sprogle in 1732 and 1733, it was completely removed by the deed executed in 1740 by the attorney in fact of H. Soames, and the delivering up of the said deeds by him to be cancelled, whereby the title to the 7500 acres of land became revested in the Sprogle family. That as to the length of possession relied upon by the defendant, it was in proof that he did not come into the possession until the year 1799, and this suit was brought in the year 1819, within the period of twenty-one years, fixed by the act of limitations of this state. And that he could not tack to his own possession that of the persons under whom he claimed; they relied upon the decision of this court in the case of Potts v. Gilbert, [Case No. 11,347.]

Kittera, for the defendant, insisted, that the deed of the attorney of Soames did not, in any manner, operate to revest the estate in the Sprogle family, and manifestly did not apply to the 7500 acres of land, nor was it so understood by the parties. That the plaintiff's title therefore was clearly defective. But that, at all events, the defendant had shown a regular·continuing actual possession out of the lessor of the plaintiff, and those under whom he claims, for upwards of sixty years; and in the defendant, for more than twenty-one years before this suit was brought.

[Plaintiff suffered a nonsuit.]

WASHINGTON, Circuit Justice, charged the jury. The first, and most important question for your decision is, whether the plaintiff has made out such a title to the land now in controversy as will authorise you to give a verdict in his favour? If he has not, your verdict ought to be for the defendant, however imperfect his title may be. The first question is one purely of law; and the opinion of the court is, that the title of the plaintiff is altogether defective. We go back to the year 1732, at which time the title of J. H. Sprogel to the large tract of land, of which that in question was a part, was unexceptionable. But in that year he mortgaged 7500 acres of that tract, including the land in controversy, to Henry Soames, for securing the payment of £75. The money not having been paid at the time stipulated, Sprogle, in the succeeding year, in consideration of the debt aforesaid, and of an additional advance, released to Soames his equity of redemption in the mortgaged premises, whereby Soames became entitled to the estate therein, both legal and equitable. The next inquiry is, whether, by any subsequent act of Soames, or of any person claiming under him, the estate became revested in the Sprogle family. It is insisted by the plaintiff's counsel that the deed executed by Samuel Mickel produced this effect. With respect to that deed, it is to be premised, that it makes its appearance before the court in a very questionable shape, if indeed·it be entitled to all the importance which is attached to it by the plaintiff's counsel. It is not even dated; and so little attention seems to have been bestowed upon it, that the common and neces-

sary form observed in the execution of deeds by an attorney, was disregarded. In the body of it, it is true, Mickel styles himself the attorney in fact of Henry Soames, but it is signed and sealed in his individual name, not as attorney of his constituent, nor with his name. This might answer very well to a paper which imported no more than a mere settlement of accounts, and an acquittance; but it cannot, upon any principle of law, be said to be the deed of Henry Soames. Where would we expect to find a deed of the importance attributed to this paper by the counsel, and where was it found? One would suppose amongst the title papers belonging to this estate, in the possession of the Sprogle family; since, without the evidence of a reconveyance, the title was forever gone, and vested in Soames by the deeds of 1732 and 1733. But instead of this, it was scraped out of the cast away papers in the garret of a Mr. Say, by one of his descendants, in the course of a few months past. It professes to be an acquittance of all bonds, mortgages, and conveyances, touching the premises in Hanover and elsewhere, and the cancelling of all papers and parchments. What became then of the deeds of 1732 and 1733? The plaintiff's counsel answer, that they furnished them on the trial to the defendant's counsel. This is true; but were they found amongst the title papers of the Sprogle family? No evidence of this kind was offered. But how happens it, that they were recorded in the year 1794, nine years after the time when Mickel's deed declared they were cancelled, if it be true that they were at all referred to, or in the contemplation of the parties when that deed was executed? They must have been offered for record, either by J. H. Sprogle, or Henry Soames. If by the former, it was surely an extraordinary mode of cancelling and destroying them, to perpetuate by record proof of the evidence of their being subsisting and valid deeds. If they were recorded at the instance of Soames, it proves that they still remained in his possession, the evidences of his title to the 7500 acres of land, which he deemed it prudent to perpetuate; and if so, they could not be conveyances to which Mickel's deed referred. But be it one way or the other, they never were cancelled, and Mickel's deed states that the papers and parchments to which it applied were so. But suppose the deed under consideration clear of all these difficulties;— what is its purport, and legal effect? It professes to amount to no more than an acknowledgment that all accounts between Sprogle and Soames had been finally settled, and an acquittance to Sprogle from all debts by bond or mortgage. It has not one feature of a grant of any land, much less of that, the equity of redemption in which had been re-

leased to Soames. It cannot be considered even as an agreement to reconvey the 7500 acres of land; and even if it could, it would not benefit the plaintiff in this action, who is bound to establish in himself a legal title to the land in controversy. If it were necessary to go further, it might be very safely laid down, that even if the deed in question were in fact a reconveyance of the 7500 acres of land, it was not warranted by the power of attorney to Mickel. That power referred to accounts and debts then open and subsisting; whereas the debt which was secured by the mortgage deed of 1732 had been finally closed and discharged seven years before the power was given, by the deed of 1733. It authorised Mickel to sell the lands of his constituent; but the deed under consideration does not even profess to be the evidence of a sale of any kind.

The title of the plaintiff being thus obviously defective, I should not deem it necessary to notice that of the defendant, founded upon length of possession, if the plaintiff's counsel did not seem to have misunderstood the decision of this court in the case of Potts v. Gilbert, [Case No. 11,347,] which was altogether different from the present. In that, the persons, of whose possessions the defendant sought to avail himself, were mere intruders, or squatters, as they are called, upon a vacant possession, without title or colour of title, between whom and the defendant there was no privity. The court laid it down, that the title of the plaintiff drew to it a constructive possession sufficient to bar the running of the act of limitations against him. That when that possession was disturbed by the actual possession of A, a continuance of such possession for twenty-one years would have divested the right of the owner to the particular part so possessed, and vested a right in A. But that if, after possessing the land for a number of years, short of those mentioned in the statute, A left the land and B took possession, the constructive possession of the owner revived, and B could not tack to his possession that of A the prior occupant, so as to make out a twenty-one years possession against the real owner of the land. These were the principles of that decision. In this case, Preston entered under a claim and colour of title derived under Soames, although the title papers recited in his deed to Guiger have not been produced; and in 1794 he conveyed the land, of which the tract in question is a part, to Guiger, from whom the title is regularly deduced to the defendant. No two cases therefore can be more unlike than Potts v. Gilbert, [supra,] and the present. Upon the whole, the defendant is clearly entitled to your verdict.

The plaintiff suffered a non-suit.